Louis W. Cox, Appellee, v. City of Des Moines, Appellant.

No. 46530.

November 14, 1944.

F. T. Van Liew, Bruce J. Flick, Paul Hewitt, and Harvey Bogenrief, all of Des Moines, for appellant.

C. S. Missildine and Ralph N. Lynch, both of Des Moines, for appellee.

Mulroney, J.—The sufficiency of the petition in this case was before us upon a former appeal. See Cox v. City of Des Moines, 233 Iowa 272, 273, 7 N. W. 2d 32, 33. There, in our summary of the pleadings, we stated:

"The petition charges in substance that in one of appellee's parks there is a building leased by it to various organizations for the holding of meetings and social gatherings. Along this building is a sidewalk maintained by appellee. On the 17th day of May 1941, about midnight, appellant was leaving a party held in the building, by way of this sidewalk. While so doing he inadvertently stepped off the edge of it, his foot slipped on a steep incline, and he fell into a pit and was injured. This pit was about eight feet deep, had a concrete

floor, and was about nine feet from the edge of the walk. The petition further alleged that the ground between the sidewalk and the pit was covered with grass and sloped abruptly to the pit. On the night of the accident the grass was damp, very slick and smooth, and when appellant stepped off the sidewalk his feet slipped from under him and he fell into the pit.''

After our holding that the demurrer to the above petition should be overruled trial was had, which resulted in a verdict for the plaintiff and the defendant now appeals.

The undisputed evidence in the case shows that on the night of May 17, 1941, plaintiff attended a dance at the Waveland Park Club House in Des Moines, Iowa. This clubhouse is located upon the Waveland municipal golf course and it is often leased to individuals and clubs for dances and parties. On this night it was leased to a dancing club of which plaintiff was a member. Plaintiff and his wife and another couple, Mr. and Mrs. Burke, went first to the home of Mr. and Mrs. George Murphy and they all rode to the dance in Mr. Murphy's car. They arrived at the dance about 9 or 9:30 and when the dance was over, sometime around midnight, plaintiff's group, with the exception of Mr. Murphy, congregated outside the clubhouse at the east or street entrance near an outside light. They were waiting for Mr. Murphy to return with the car, for he had left the dance to take a girl who had been staying with his child to her home. The persons in charge of the clubhouse had closed it up and turned out the lights. After standing around in the group for about half an hour, Burke and the plaintiff walked around to the north side of the clubhouse upon a cement sidewalk to seek a place to answer the call of nature. The cement sidewalk was level and smooth and five feet wide and plaintiff was walking on the building side of the walk. There is no street along this side of the building and with the lights turned off inside the clubhouse it was dark here, but, of course, both Burke and plaintiff testified they were seeking a dark place. Upon the inside of the walk there was a practically level grass shoulder about four feet wide, then a steep grass embankment down to an open basement entrance to the clubhouse. This basement entrance, which is seven to nine feet south of the

sidewalk, has steps along the west end. It is about four feet wide, with a cement floor east of the steps, and the pit or well, as it is called in the testimony, is about eight feet deep, with the north wall, that is parallel to the sidewalk, flush with the bottom of the steep grass embankment.

Plaintiff testified:

"Mr. Burke and I were walking on the north side of the building on the sidewalk. I stepped on the edge of the sidewalk, turning my ankle, and was thrown south of the sidewalk. It was in utter darkness. * * * I maintain while walking down the sidewalk I stepped a little too close to the edge of the sidewalk, which turned my ankle and caused me to step in the direction of the pit. I fell in the pit. I did not fall down at the edge of the walk. I did not roll down this terrace. I maintained my equilibrium. I kept running down the terrace. I was standing up straight. * * * The walk was smooth. There were no defects in it. It was not out of repair in any particular. * * * There was no obstruction on the walk that evening * * * I would say that if my ankle had not turned this would not have happened. The turning of the ankle is what set in motion the train of events that ended up in my injury. * * * The grass at the edge of the walk that night was not wet. * * * There is a lighting fixture over the basement door, but it was not lighted."

The trial court submitted two grounds of negligence to the jury, namely, failure of the defendant to erect a barrier at the wall of the basement pit and failure of the defendant to maintain the light near the pit.

I. The defendant assigns ten grounds of error. One of them is that "plaintiff failed to sustain his burden of proving that the defendant was negligent and it was, therefore, error for the court to overrule defendant's motion in arrest of judgment and for judgment notwithstanding the verdict." Because of our ruling in defendant's favor on this ground we do not reach other alleged errors.

Since we once held the petition in this case sufficient, it is well to observe the difference between the pleaded case and the evidence introduced by plaintiff to support the allega-

tions in the petition. In the petition plaintiff states that he attended this dance and "* * * as he was leaving said building he proceeded along the north side of said building on the sidewalk," etc. We learn from the evidence that the party was over and the lights turned off in the clubhouse, and he stood around outside for about half an hour and his walk on the north side was not "as he was leaving the building" but for the purpose of finding a dark place to relieve himself. The north side of the building was not used for entering or leaving the building. The petition states that the ground between the sidewalk and pit was covered with grass and sloped abruptly down from the sidewalk to the edge of said pit and on the night of the accident the said grass was damp and very "slick and smooth." We learn from the testimony that there was a shoulder that was nearly level having a drop of 4.8 inches from the level of the walk to a point four feet south, before the abrupt decline started, and that the grass was dry. In the petition plaintiff states that when he "stepped from the sidewalk, his feet slipped from under him and he fell into said pit." He testified that he did not fall when he turned his ankle but maintained his equilibrium and either walked or ran over the grass and into the pit. He complains in his petition of the defendant's failure to maintain lights and a barrier at this open stairway. He testified he was seeking darkness, and, with respect to a railing, he stated:

"A railing to be adequate would have to be of considerable height. I am six feet two and weigh 170 pounds. I was on the run down the terrace. A low railing would not be adequate. It would just upset me."

II. The plaintiff first argues that under the pleadings and proof section 5945, Code of 1939, is applicable. This section provides:

"They [cities] shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

The argument is that under this statute the city has the

same duty of proper maintenance of a park sidewalk that it has for any other sidewalk in the city. Here the evidence is that the walk leads from the front of the building around the building to the side door and there ends. But plaintiff's chief reliance is upon his argument that he was ''both an invitee and a paying customer of the City of Des Moines [and] before his invitation or business had been concluded he walked from the east side around to the north side of the city's building for a legitimate purpose.'' The argument then proceeds on the theory of the defendant's being negligent in maintaining this unguarded and unlighted open basement stairway along the north side of the building, in close proximity to the sidewalk down which plaintiff, as an invitee, fell.

We fail to follow the argument. True, plaintiff was an invitee to the clubhouse and as such the city owed to him the duty of exercising due care in maintaining the premises in a reasonably safe condition. Noyes v. Des Moines Club, 178 Iowa 815, 160 N. W. 215; Keeran v. Spurgeon Mercantile Co., 194 Iowa 1240, 191 N. W. 99, 27 A. L. R. 579, and cases there cited.

In order for plaintiff to recover upon the theory of an injured invitee not contributorily negligent it was incumbent upon him to show (1) that he was injured during the time covered by the invitation (2) at a place where he was invited and (3) the unsafe condition of the premises, negligently allowed to exist, that was the proximate cause of the accident. In our opinion the undisputed evidence does not establish any one of these three requisites.

The plaintiff was invited to a dancing party in the clubhouse. The party was over. Plaintiff and his party were the last to leave. Indeed, the evidence shows that the city's employees had some trouble getting the plaintiff and his party out of the clubhouse so they could lock up after the party was over. The lights in the building had been turned off. The clubhouse had been locked. The park employees had gone home. The plaintiff and his party stood in the lighted vehicular drive for half an hour waiting for the car to come back and take them home. The plaintiff's invitation to the city's clubhouse build-

ing and grounds had expired. He would no longer be considered an invitee if he attempted to re-enter the building or walk around the darkened grounds. The city had provided a lighted area in front of the clubhouse where the plaintiff could wait for his transportation, but the invitation for plaintiff to the building and building premises had definitely ended. During the period that the invitation was in force the building and premises were lighted. The very basement entrance down which plaintiff fell was lighted by an outside light while the party was in progress. Because plaintiff was an invitee when he came to the building and the clubhouse premises, he did not remain an invitee after he left the building at the conclusion of the party.

Plaintiff was not injured at a place where he was invited. Of course, the time and place must be considered together. Plaintiff's status at the conclusion of the party to which he was an invitee might well continue as he proceeded to leave. This is the case he pleaded, but his proof is otherwise. He was not injured "as he was leaving the building" as he stated in his petition. He was injured a half hour after he had left the building, while wandering around the building in the dark to seek a place to relieve himself. The invitation extended to him to come to the lighted building for the dance did not include an invitation to walk around the building after the dance was over and the lights extinguished. We said, in Keeran v. Spurgeon Mercantile Co., 194 Iowa 1240, 1242, 191 N. W. 99, 100, 27 A. L. R. 579:

"The invitation, express or implied, to conduct business upon the premises is an invitation to use the premises in the ordinary and usual manner in which business is conducted thereon; and it does not render the owner or occupant of the premises liable for negligence where the invitee is using a portion of the premises to which the invitation has not been extended, either expressly or impliedly, and which the occupant would not reasonably expect the invitee to use in connection with the conduct of business on said premises." (Citing cases.)

The plaintiff was not the city's invitee when he walked around to the north side of the building a half hour after the party was over. It cannot be said that the city could reasonably

expect that plaintiff, whom it had invited to the dance, would go walking around the darkened building a half hour after the dance was over. See Knote v. City of Des Moines, 204 Iowa 948, 216 N. W. 52.

Proof that the city constructed this smooth, level cement walk, with an almost level grass shoulder four feet wide, with a steep grass embankment beyond the shoulder leading to the well of an open basement entrance is no proof of negligence. There is nothing particularly dangerous about such construction. Plaintiff argues that the negligence lies in the failure to erect a barrier and maintain a light and he leads us into the cases that discuss a municipality's liability for a defect, not in the walk itself, but so close to it as to endanger persons properly using the walk. He cites Hall v. Incorporated Town of Manson, 99 Iowa 698, 68 N. W. 922, 34 L. R. A. 207, but there the excavation was at the very edge of the town sidewalk. There was no barrier and evidence of no light, and we held the question of the town's negligence was for the jury. We are not referred to any case where the failure to erect a barrier four feet from a sidewalk where there is a steep decline has been held negligence. Nor have we been referred to any case holding that a city is required to light such a sidewalk in a park. The rule is rather well stated in an old case, where a lady who was walking at night in Central Park in New York sued the city when she fell down some steps in a pathway. The only claim was that the pathway was not lighted. In holding that her action was rightly dismissed, the Supreme Court of New York stated:

"We may assume, for the purposes of this appeal, that it was the duty of the city to maintain the walks in Central Park in a reasonably safe condition for the use of the people who had occasion to go there for business or pleasure. This duty was not to keep the walks absolutely safe, at night as well as in the daytime, but to keep them reasonably safe. * * * The walks in the park are not generally used in the nighttime for pleasure travel, and we do not think it should be held that the city has the legal duty imposed upon it to light up its walks in the park so that the attention of people will necessarily be called

to irregularities like these steps that are found in different parts of the park." O'Rourke v. Mayor, 17 App. Div. 349, 350, 45 N. Y. Supp. 261, 262, cited at 29 A. L. R. 880.

So, too, here we can say the city's duty was not to keep this walk that led around to the side door of the clubhouse absolutely safe at night, when the clubhouse was closed, as well as in the daytime or when the clubhouse was open.

The city could not be held negligent in failing to maintain a light after the clubhouse was closed for the night. The walk ordinarily served the clubhouse in·the sense that it was used as.a way to and from the side-door entrance. There would be no legal duty to maintain the light at night when the clubhouse was closed.

It is our conclusion that plaintiff failed to prove he was an invitee at the time and place of the accident and that in any event there was no proof of negligence. Defendant's motion in arrest of judgment and for judgment notwithstanding verdict should have been sustained. The case is reversed with directions that judgment be entered for defendant.—Reversed.

All JUSTICES concur.